## Payton's Administrator v. Childers' Electric Company et al.

(Decided February 15, 1929.)

MORTON K. YONTS for appellant.

FURLONG & WOODBURY for appellees.

Opinion of the Court by Judge Rees—Affirming in part and reversing in part.

Charles S. Payton, an employee of the Duffy Ice Company of Louisville, was killed at the plant of that company on July 2, 1926, by coming in contact with an electrically charged wire. William A. Rosenfield qualified as administrator of Payton's estate and brought an action for damages for his intestate's death against the Childers Electric Company and the Louisville Electric Manufacturing Company.

The decedent was employed in the tankroom of the ice company, and it was his duty to operate an electric crane by means of which blocks of ice were transferred from the tanks to a storage room. The crane traveled on an overhead wire, or I beam which was attached to the wall at each end of the room. The petition first charged that it was the duty of the decedent to operate the electric crane, and then charged the two defendants with the operation of the crane, electric wires, and appliances, and averred that Payton's death was caused by the gross negligence and carelessness of the defendants in the operation of the crane.

The Louisville Electric Manufacturing Company filed a demurrer to the petition, and Childers Electric Company filed a motion to require the plaintiff to make his petition more definite and certain and to state whether the defendants were jointly or severally guilty of the negligence alleged, and whether, at the time of Payton's death he or the defendants were operating the crane. The demurrer and motion were sustained, and an amended petition was filed, in which it was averred that:

"The defendant, Louisville Electric Manufacturing Company, its agents and servants, by and through their gross negligence made certain constructions, reconstructions and repairs upon said electric crane and the appliances thereunto and upon certain electric wires and appliances thereunto connected with said electric crane in a grossly negligent, careless, unskillful and unworkmanlike manner and because and by reason of said gross negligence on the part of said defendant, its agents and servants as aforesaid, the said Charles S. Payton while acting for and on behalf of the Duffy Ice Company as its

agent and servant and within the scope and course of his employment as such, and while operating said electric crane, was struck by certain wires and appliances and constructions which were a part of said electric crane and which, by reason of the said grossly negligent, defective and dangerous construction thereof had fallen from its accustomed place and had come in contact with the body of said Charles S. Payton and by reason thereof the electric currents which were carried in the said electric crane and its wires and appliances came in contact with the plaintiff's intestate and thereby caused a dangerous and deadly current of electricity to flow through the body of plaintiff's intestate and as a result thereof, plaintiff's intestate lost his life.''

The Childers Electric Company filed a demurrer to the petition as amended, and the Louisville Electric Manufacturing Company filed a motion to make it more specific, which was sustained, and second and third amended petitions were filed, to which like motions were sustained. The Childers Electric Company was not referred to in any of these amendments, and, after the third amendment had been filed, the court properly sustained a motion to dismiss the petition as to it. A fourth amended petition was filed, in which it was averred that:

''A hoisting device was fastened to the wall and the said device was also improperly, imperfectly and unsuitably fastened to and against said wall, and the entire electric hoist and all the appliances thereunto were so improperly and unsuitably constructed, reconstructed, and repaired by said defendant company that the said hoists and all the appliances thereunto were in an imminently and inherently dangerous condition, and the said defendant company, its agents and servants, knew that said electric hoist and its appliances were to be operated by means of electricity, and that a deadly and dangerous current of electricity would pass to the said hoist and certain appliances thereunto for the purpose of operating the said hoist and the men employed by the Duffy Ice Company would be required to operate the said electric hoist, and said defendant company, its agents and servants aforesaid had knowledge or means of knowledge of the imminently and inherently dangerous condition of the said hoist and said appliances

thereunto as aforesaid, and the plaintiff's intestate did not know of said dangerous and defective condition of said hoist and all the appliances thereunto and did not know that the said hoist and appliances thereunto were imminently and inherently dangerous and that because, and by reason of said condition of said hoist and certain appliances in connection therewith, a certain portion of said hoist and the appliances thereunto touched the plaintiff's intestate and wrapped themselves about his body and he received through his body a deadly and dangerous current of electricity by which his life was destroyed."

The Louisville Electric Manufacturing Company filed a demurrer to the fourth amended petition and a motion to make it more specific in certain particulars, both of which were sustained, and, the plaintiff declining to plead further, the petition was dismissed.

The only question before us is the sufficiency of the petition as amended. The charge, in substance, is that the defendant Louisville Electric Manufacturing Company negligently constructed and installed the electric crane, a thing imminently dangerous when put to the uses intended, considering the manner in which it was constructed and installed, and that, as a result of defendant's negligence, plaintiff's intestate, an employee of the purchaser, was killed. The question to be determined is whether the defendant owed a duty of care to the purchaser's employee whose duty it was to operate the crane.

The general rule is that a contractor, manufacturer, or furnisher of an article is not liable to third parties who have no contractual relation with him for negligence in the construction, manufacture, or sale of such article, but certain exceptions to this general rule are universally recognized. These exceptions are discussed in Olds Motor Works v. Shaffer, 145 Ky. 616, 140 S. W. 1047, 37 L. R. A. (N. S.) 560, Ann Cas. 1913B, 689, and MacPherson v. Buick Motor Co., 217 N. Y. 382, 111 N. E. 1050, L. R. A. 1916F, 696, Ann. Cas., 1916C, 440, and all the leading decisions on the subject are reviewed in the opinions in those cases. One of the exceptions to this general rule is stated thus in Huset v. J. I. Case Threshing Machine Co. (C. C. A.) 120 F. 865, 61 L. R. A. 303:

"An act of negligence of a manufacturer or vendor which is imminently dangerous to the life or

health of mankind, and which is committed in the preparation or sale of an article intended to preserve, destroy, or affect human life, is actionable by third parties who suffer from the negligence.''

The early cases limited this exception to things in their nature destructive, such as poison, explosives, and deadly weapons, but the tendency recently of the great majority of the courts has been to extend this exception to include any article imminently dangerous, whether inherently so or not, and we think the exception as extended is sound in principle.

In MacPherson v. Buick Motor Co., supra, the manufacturer of an automobile was held liable when the automobile, purchased by the plaintiff from a dealer, collapsed because of a defective wheel. Judge Cardozo, in a well-reasoned opinion, speaking for the court said in part:

"We hold, then, that the principle of Thomas v. Winchester, (6 N. Y. 397, 57 Am. Dec. 455) is not limited to poisons, explosives, and things of like nature, to things which in their normal operation are implements of destruction. If the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger. Its nature gives warning of the consequences to be expected. If to the element of danger there is added knowledge that the thing will be used by persons other than the purchaser, and used without new tests, then, irrespective of contract, the manufacturer of this thing of danger is under a duty to make it carefully.''

A reference to Shepard's North Eastern Reporter Citations will disclose numerous cases that have cited the MacPherson case, most of them with approval, and among which are: Johnson v. Cadillac Motor Car Co. (C. C. A.) 261 F. 878, 8 A. L. R. 1023; McLeod v. Linde Air Products Co. (Mo. Sup.) 1 S. W. (2d) 122; White Sewing Machine Co. v. Feisel, 28 Ohio App. 152, 162 N. E. 633; Flies v. Fox Bros. Buick Co. (Wis.) 218 N. W. 855. In Olds Motor Works v. Shaffer, supra, this court said:

"It is further insisted that under the authorities cited there can be no recovery unless the article is what is termed an 'imminently dangerous' one;

and, it is said that as an automobile cannot be classed an an imminently dangerous machine, the rule of law holding manufacturers liable cannot be invoked by appellee. It is true that generally speaking the liability of the maker of an article in cases like this to third parties is confined to articles that are regarded as imminently dangerous to life or limb. But this does not mean that the article must be at all times and under all conditions imminently dangerous. This would be entirely too narrow a construction to place upon the meaning of these words as used in the opinions, and while the words imminently dangerous will be often found, the disposition of the cases in which they are used shows that they were used in a broad and liberal sense. Many articles are very simple and safe in their use and construction, and under no conditions could they be regarded as dangerous in their use. On the other hand, there are a great many things in common use that are dangerous, unless they are safely and properly constructed. This is specially true of machinery that is operated by power of any kind. It is a matter of common knowledge that automobiles are equipped with engines operated by electricity, steam or gasoline, and are intended to travel over highways at a high rate of speed, and it is indispensable to the safety of persons using these vehicles that they should be safely and properly constructed with reference to the use for which they are intended. They are in general use throughout the country, and are employed as means of transportation by great numbers of people, and the liability of their occupants to injury from defects in material or construction is so great as to put upon manufacturers the duty of exercising a high degree of care in their construction and equipping them in such a manner as will make them when used with proper care reasonably safe.''

Also see Ward v. Pullman Co., 138 Ky. 554, 128 S. W. 606; Kentucky Independent Oil Co. v. Schnitzler, 208 Ky. 507, 271 S. W. 570, 39 A. L. R. 979; Coco-Cola Bottling Works v. Shelton, 214 Ky. 118, 282 S. W. 778.

The rule applicable to the instant case and sustained by the weight of authority is that the manufacturer or installer of an article which is not inherently

dangerous, but which by reason of negligent construction, is manifestly dangerous when put to the use for which it is intended, is liable to any person who suffers an injury therefrom, which injury might have been reasonably anticipated. Osheroff v. Rhodes-Burford Company, 203 Ky. 408, 262 S. W. 583, does not announce a contrary rule, since it was held under the facts of that case that the article was not inherently or imminently dangerous.

Here the crane or hoist was to be operated by electricity, and, if negligently constructed or installed, would be dangerous to those operating it. The defendant necessarily knew that it was to be operated by the employees of the Duffy Ice Company, and, if it negligently constructed or installed the equipment, knew that it was imminently dangerous to such employees. If properly constructed and installed, it was not inherently dangerous merely because it was operated by electricity, but, if negligently constructed or installed, it would become dangerous when put to the use intended. Considerations of public policy demand that the utmost care and caution be exacted from the manufacturer and installer of electrical machinery, and the operator has a right to rely upon the implied representation that the machinery is properly installed and free from defects.

"The manufacturer of an article, not inherently dangerous, but which may become dangerous when put to the use for which it is intended, owes to the public the duty of employing care, skill and diligence in its manufacture and of using reasonable diligence to see that it is reasonably fit for the purpose for which it was intended." Heckel v. Ford Motor Co., 101 N. J. Law 385, 128 A. 242, 39 A. L. R. 989.

The motion to make plaintiff's petition more definite and certain was an effort to require him to set out the specific acts of negligence relied on. The petition as amended contains a general allegation of negligence, and this is all that is required. Schmidt v. City of Newport, 184 Ky. 342, 212 S. W. 113; Pullman Co. v. Pulliam, 187 Ky. 219, 218 S. W. 1005; Hart v. Roth, 186 Ky. 535, 217 S. W. 893.

Wherefore the judgment is affirmed as to Childers Electric Company and reversed as to Louisville Electric Manufacturing Company, with directions to overrule the demurrer to the fourth amended petition and the motion to make it more specific.